IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| QBE INSURANCE CORPORATION, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 07-471 |
| | ) |
| J&L HOME ENTERPRISES, INC., | ) |
| A CORPORATION; JAMES ALAN | ) |
| THOMASON, AN INDIVIDUAL; | ) |
| KEARNEST GANTT, AN INDIVIDUAL; | ) |
| WILLIAM A. RUSSELL, AN | ) |
| INDIVIDUAL; | ) |
| | ) |
| Respondents. | ) |

**PETITIONER QBE INSURANCE CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Petitioner QBE Insurance Corporation ("QBE") moves that this Court to grant summary judgment in QBE's favor, and against Respondents J&L Home Enterprises, Inc.; James Alan Thomason; Kearnest Gantt; William A. Russell, on QBE's declaratory judgment action on the issues of coverage, defense, and indemnification with regard the policy of insurance QBE issued to J&L Home Enterprises, Inc. ("J&L"). Summary judgment is due QBE based upon the absence of an affirmative answer by the Respondents, the applicability of the workers' compensation exclusion, the applicability of the fellow employee exclusion, and the additional exclusionary language that bars coverage where the bodily injury is to an employee conducting business for the insured. The plain and unambiguous language of the QBE policy precludes coverage and does not afford the Respondents a defense or indemnification.

This motion is based upon the following:

- The Pleadings;

- Insurance Contract, attached hereto as **Exhibit A**;

- The underlying complaint in *Daniel McGougin, as Administrator of the Estate of Daniel Leigh McGougin v. J&L Home Enterprises, Inc., et al.*, CV-06-235, attached hereto as **Exhibit B**;

- Affidavit of Farrah Karimi, attached hereto as **Exhibit C**; and

- Case law and argument set out herein.

In support of said motion, Petitioner QBE states as follows:

I. **Narrative Statement of Undisputed Facts**

a. **Narrative Statement of Undisputed Facts**

1. The Underlying Suit involves a fatal automobile accident in Escambia County, Alabama. [Exh. B, ¶ 1].

2. Daniel McGougin was employed by J&L Home. [Exh. B, ¶ 7].

3. On August 19, 2005, Mr. McGougin was killed in an automobile accident during the course of his employment with J&L Home. [Exh. B, ¶¶ 1, 7].

4. Mr. McGougin was a passenger of William Andrew Russell, Jr. ("Russell"). [Exh. B, ¶15].

5. Mr. Russell was employed by J&L Home, through the State of Alabama Escambia County's Work Release Program. [Exh. B, ¶8]

6. Mr. Russell lost control of the J&L Home vehicle, a 1992 Chevy S10 Pick Up, traveled several hundred feet, straight on the shoulder, parallel to the road before hitting a tree. [Exh. B, ¶ 15, 16]

7. Mr. McGougin was instantly killed. [Exh. B, ¶16].

8. On August 23, 2006, Daniel McGougin, as Administrator of the Estate of Daniel Leigh McGougin, deceased, filed suit in the Circuit Court of Escambia County, Alabama, against J&L Home Enterprises, Inc.; James Alan Thomason; Kearnest Lynell Gantt; and William A. Russell, Jr. for the alleged wrongful death of Daniel Leigh McGougin. (hereinafter referred to as "Underlying Suit")[Exh. B].

9. Mr. Thomason is an employee and owner of J&L Home. [Exh. B, ¶ 4].

10. Mr. Gantt is also an employee of J&L Home. [Exh. B, ¶5].

11. Mr. Russell is an inmate participating in the Escambia County Work Release Program. [Exh. B., ¶8].

12. Pursuant to a Reservation of Rights, QBE began an investigation of this claim and extended a defense to the defendants in the Underlying Suit. [Exh. C, ¶1].

13. QBE has continued to defend the defendants in the Underlying Suit under reservation of rights. [Exh. C, ¶2].

### b. The QBE Policy

14. QBE issued a commercial automobile insurance policy bearing policy no. ANA14039-3, effective August 29, 2004 through August 29, 2005 to J&L Home. [Exh. A] The limit of the coverage provided under the Auto Policy is subject to various coverage provisions, endorsements, terms, conditions, limitations, and exclusions. [Exh.A]. The Auto Policy includes (among other things) the following general provisions regarding coverage:

**BUSINESS AUTO COVERAGE FORM**
...

**SECTION II-LIABILITY COVERAGE**
**A. COVERAGE**
**We will pay all sums an "insured legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered**

3

"auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense: to which this insurance applied, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend an "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends with the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. Who Is An Insured

    The following are "insureds":

    a. You for any covered "auto".
    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
        (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
        (2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.
        (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
        (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
        (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household
    c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

...

B. Exclusions

This insurance does not apply to any of the following:

...

3. Worker's Compensation

    Any obligation for which the "insured" or the "insured's" insurer may be held liable under any worker's compensation, disability benefits or unemployment compensation law or any similar law.

4

4. Employee Indemnification And Employer's Liability
   "Bodily injury" to:
   a. An employee of the "insured" arising out of and in the course of:
      (1) Employment by the "insured"; or
      (2) Performing the duties related to the conduct of the "insured's" business; or
   b. The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.
   This exclusion applies:
      (1) Whether the "insured" may be liable as an employer or in any other capacity; and
      (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
   But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to worker's compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.
5. Fellow Employee
   "Bodily Injury" to any fellow employee of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

...

## SECTION V-DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include "mobile equipment".

...

E. "Employee" includes a "leased worker".
   "Employee does not include a "temporary worker".

...

H. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

...

N. "Temporary worker" means a person who is furnished to you for a finite time period to support or supplement your workforce in special work situations such as "employee"

...

5

## II.     Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Shalimar Contractors, Inc. v. American States Ins. Co.*, 975 F. Supp. 1450 (M.D. Ala. 1997). The court must construe the evidence and factual inferences in the light most favorable to the non-moving party. *Givahn v. Electronic Engineers, Inc.*, 4 F. Supp. 2d 1331, 1335 (M.D. Ala. 1998) (citing *Adickes. S.H. Kress & Co.*, 398 U.S. 144 (1970)). The party seeking summary judgment has the burden to establish there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. In cases where the non-moving party will bear the burden of proof at trial, the moving party may either submit affirmative evidence negating an essential element of the non-moving party's claim, or demonstrate that the non-moving party's evidence is insufficient to establish an essential element of his claim. *Celotex*, 477 U.S. at 322.

When the moving party makes out a prima facie case that no genuine issue of material fact exists, the burden shifts to the non-moving party to rebut the showing by presenting substantial evidence of the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (U.S. 1986) (emphasis in original). Further, 'the plain language of Rule 56 (c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Indeed, "in

such a situation, there can be 'no genuine issue as to any material fact,' since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.*

Neither unsubstantiated assertions nor conclusory allegations are sufficient to satisfy the non-moving party's burden. *Earley v. Champion Int'l Corp.*, 907 F. 2d 1077, 1081 (11th Cir. 1990); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590 (11th Cir. 1987). Courts have defined "substantial evidence" as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *West v. Founders Life Assurance Co. of Florida*, 547 So. 2d 870, 871 (Ala. 1989); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991). The non-moving party must go beyond the pleadings, and by affidavits or other evidence, he must show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; See also Fed. R. Civ. P.. 56(e). In meeting this burden, the nonmoving party must do more than simply show that there is a metaphysical doubt as to the material facts. The non-moving party must demonstrate there is a genuine issue for trial. *Celotex*, 477 U.S. at 323.

### III. Argument

#### a. Alabama Courts Have Set Out Clear Guidelines for Interpretation of Insurance Contracts, Which Is a Question of Law in Alabama.

In the insurance context, Alabama law provides that "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide . . . . If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court." *Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 696-97 (Ala. 2003) (citation omitted); *see also B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So.2d 877, 879 (Ala. Civ. App. 2001) ("The interpretation of an insurance contract presents a question of law.").

7

In *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691-92 (Ala. 2001), the Alabama Supreme Court summarized the law in Alabama governing interpretation of insurance contracts:

> A contract of insurance, like other contacts, is governed by the general rules of contracts. *Pate v. Rollison Logging Equip., Inc.*, 628 So.2d 337 (Ala.1993). Insurance companies are entitled to have their policy contract enforced as written. *Gregory v. Western World Ins. Co.*, 481 So.2d 878 (Ala.1985). "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So.2d 866, 870 (Ala.1996).
>
> If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction. *American & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So.2d 1226 (Ala.1997). The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous. *Tate v. Allstate Ins. Co.*, 692 So.2d 822 (Ala.1997). While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning. *Kelly v. Royal Globe Ins. Co.*, 349 So.2d 561 (Ala.1977). Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it. *Western World Ins. Co. v. City of Tuscumbia*, 612 So.2d 1159 (Ala.1992).
>
> Where an insurance policy defines certain words or phrases, a court must defer to the definition provided by the policy. *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.*, 584 So.2d 1316 (Ala.1991). . . . An undefined word or phrase in an insurance policy does not create an inherent ambiguity. To the contrary, where questions arise as to the meaning of an undefined word or phrase, the court should simply give the undefined word or phrase the same meaning that a person of ordinary intelligence would give it. *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628 So.2d 560 (Ala.1993).

*Twin City*, 817 So. 2d at 691-692.

Further, the Alabama Supreme Court "has held that an insurance company has the right to limit its liability and write a policy with narrow coverage but that, when doubt exists as to whether an insurance policy provides coverage, the language used by the insurer must be construed liberally for the benefit of the insured and strictly against the insurance company."

8

*Turner v. State Farm Fire & Cas. Co.*, 614 So. 2d 1029 (Ala. 1993). "It is the duty of the court to interpret the terms of an insurance contract in a rational and practical manner and only those clauses which are uncertain may be favorably construed for the insured." *General Agents Ins. Co. of America, Inc. v. Compton*, 921 F. Supp. 716, 721 (N.D. Ala. 1996)(citing *Green v. Merrill*, 293 Ala. 628, 308 So. 2d 702, 704 (1975); *Alabama Farm Bur. Mut. Cas. Ins. Co. v. Goodman*, 279 Ala. 538, 188 So. 2d 268, 270 (1966)).

Regarding policy exclusions, "[t]he law in Alabama is clear that insurance companies have the right, in the absence of statutory provisions to the contrary, to limit their liability and write policies with narrow coverage; the insured has the option to purchase the policy or look elsewhere . . . . It is also true that the courts must enforce insurance contracts as written . . . ." *Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co.*, 289 Ala. 719, 723, 272 So. 2d 232 (1972).

> In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them.

*Goodman*, 188 So. 2d at 270.

The general contractual duty and the exclusions under a policy are "interrelated." *Pan Am. Fire & Cas. Co. v. Edwards Aircraft, Inc.*, 377 F. Supp. 205, 207 (N.D. Ala. 1974)(Pointer, J.). The exclusions have their "own role to play in defining, along with the other provisions, the contractual responsibilities of the insurer." 377 F. Supp. at 208.

Regarding endorsements, the Alabama Supreme Court has also clarified that "endorsements" to insurance policies are provisions added to an insurance contract altering its scope or application that take precedence over printed portions of the policy in conflict therewith. *Commercial Standard Insurance Co. v. General Trucking Co.*, 423 So. 2d 168 (Ala.

9

1982)

### b. No Coverage is Afforded to J&L Home Because Bodily Injury to an Employee During the Course of the Employment Is Excluded

At the time of the automobile accident, the deceased Mr. McGougin was employed by J&L Home. [Exh. B, ¶ 7]. Further, the accident occurred during the course of Mr. McGougin's employment with J&L Home. [Exh. B, ¶¶ 1, 7]. J&L Home is not afforded coverage under the QBE Policy for claims made in the underlying complaint because the plain and unambiguous policy language precludes coverage. The Policy excludes coverage where there is "bodily injury" (which by Policy definition includes death) to "an employee of the insured" arising out of and in the course of the employment by the insured; or performing duties related to the conduct of the insured's business. [Exh. A]. Because Mr. McGougin was employed by J&L Home and the accident occurred during the course of his employment with J&L Home, no coverage is afforded J&L Home for the Underlying Suit.

Additionally, to the extent the Administrator for McGougin's Estate makes a claim for workers' compensation benefits, that claim would be barred pursuant to the Workers' Compensation Exclusion. The Workers' Compensation Exclusion within the Auto Policy provides in pertinent part, that coverage is barred when the claim involves "any obligation for which the insured or the insured's insurer may be held liable under any worker's compensation, disability benefits or unemployment compensation law or any similar law." [Exh. A].

An analysis of the claims asserted in the Underlying Complaint against J&L Home, leads to the conclusion that no coverage is afforded J&L Home under the Auto Policy.

### c. No Coverage is Afforded James Alan Thomason, Kearnest Gantt, and William A. Russell Based Upon the Fellow Employee Exclusion

In addition to the absence of coverage to J&L Home, no coverage exists for the

remaining individual defendants as well. The underlying suit alleges claims against James Alan Thomason, Kearnest Gantt and William A. Russell, all employees of J&L Home.

### (1) James Alan Thomason

Mr. Thomason serves as the President and owner of J&L Home. In those positions, Mr. Thomason made day to day operational decisions, including hiring and firing of employees, implementation of employment policies and other administrative decisions. Mr. Thomason has been sued in his individual and official capacities.

Mr. Thomason is only considered an insured under the J&L Home Commercial Automobile Policy for those claims asserted against him in his official capacity. The Auto Policy provides that an insured includes "anyone liable for the conduct of an "insured" described above but only with respect to the extent of that liability." Although Mr. Thomason is an insured (for those acts committed in his official capacity), coverage remains precluded for him based upon the applicability of the Fellow Employee Exclusion.

The Auto Policy excludes coverage where the claim is based upon and/or involves "bodily injury to any fellow employee of the insured arising out of and in the course of the fellow employee's employment or while performing duties related to the conduct of your business."

In the underlying suit, McGougin and Thomason were each employed by J&L Home. Further, the unfortunate accident occurred during the course of McGougin's employment. Likewise, Thomason was performing duties on behalf of the same employer, J&L Home. Accordingly, because both McGougin and Thomason shared the same employer; both were performing duties related to their employment; and McGougin died during the course of that employment, no coverage is afforded to Thomason based upon the Fellow Employee Exclusion.

### (2) Kearnest Gantt

Applying the same analysis as above, no coverage is afforded Kearnest Gantt for the underlying suit. Mr. Gantt was employed by J&L Home. He held both labor intensive and supervisory responsibilities for J&L Home. Based upon the foregoing discussion, Mr. Gantt would be considered an insured when sued in his official capacity. However, because he and the deceased shared an employer, McGougin's death and the alleged misconduct committed by Mr. Gantt arose during the course of their employment with J&L Home, the Fellow Employee Exclusion bars coverage. Accordingly, no coverage is owed to Mr. Gantt for the underlying suit.

### (3) William A. Russell

Similarly, the Fellow Employee Exclusion precludes coverage for the remaining individual defendant William A. Russell. Mr. Russell is an inmate at Escambia County Detention Facility. He is permitted to work for J&L Home through the Escambia County Work Release Program. An inmate on work release, such as Mr. Russell, is considered an employee of the employer, not the State, while released from prison. Section 14-8-5 of the Alabama Code provides that "no inmate granted privileges under the provisions of this article shall be deemed to be an agent, employee or involuntary servant of the board while involved in the free community or while going to and from employment or other specified areas." Further, section 14-8-4 of Alabama Code provides parameters for counties engaging in a work release program.

The Escambia County Work Release Program, which Russell fell under, adopted guidelines for employers participating in the work release program. Those guidelines are:

"GUIDELINES FOR **EMPLOYERS** OF WORK RELEASE INMATES

> The Work Release Program for the Escambia County Sheriff's Department is established by state law. The conditions as sat out below are those specified in that law. The Work Release Program is audited by the State of Alabama Department of Examiners of Public Accounts on a routine basis; therefore it is of utmost importance that all records are

properly maintained by this department. It is important that all employe[r]'s cooperate with these conditions.

1. Inmate's wages are to be paid directly to the Escambia County Sheriff's Department, 316 Court Street Brewton, Alabama 36426. Checks are to be made out to the Escambia County Sheriff's Department. Not to be made out to inmate. (Cashiers Check/Money Orders Only No Personal Checks)
2. **Employment** must be at a wage at least as high as the prevailing wage for similar work in the area or community where the work is performed, and in accordance with the prevailing working conditions in such an area.
3. Such **employment** shall not result in the displacement of employed workers.
4. Inmates eligible for Work Release shall not be employed as strikebreakers or in impairing any existing contracts.
5. In the event the inmate is late or fails to report to work, or leaves his assigned duty station without permission, **employer** agrees to notify the Sheriff's Department immediately.
6. If the inmate's work schedule changes, or for any reason the inmate will be late returning to the Detention Center, the **employer** agrees to notify the Sheriff's Department immediately. Also, if the **employee** is scheduled to work and for some reason gets off early or gets the day off, **employer** agrees to contact Sheriff's Department immediately.

INMATE **EMPLOYEE**'S NAME_____

**EMPLOYER**'S NAME _____

COMPANY NAME _____

COMPANY ADDRESS _____

[emphasis added].

It is without question that Mr. Russell, although a resident, as opposed to an agent and/or employee of Escambia County Detention Facility, was considered an employee of J&L Home at the time of the automobile accident forming the basis of the underlying suit. Mr. Russell, while released from Escambia County Detention Facility, is considered an employee of J&L Home.

Accordingly, as analyzed above, Mr. Russell and Mr. McGougin shared the same employer. Further, under the same premises above for Gantt and Thomason, coverage is precluded for Mr. Russell because of the applicability of the Fellow Employee Exclusion.

No coverage is afforded any of the named defendants in the underlying suit for the

reasons set forth above. In sum, no coverage is afforded J&L Home based upon the exclusionary language barring coverage where the bodily injury is to an employee. No coverage is afforded any of the individual defendants because they were all J&L Home employees and the Auto Policy bars coverage for fellow employees where bodily injury is to a co-employee.

### d. QBE Has No Duty to Defend Any of the Defendants in the Underlying Action.

QBE further has no duty to defend J&L Home, Mr. Gantt, Mr. Thomason, or Mr. Russell in the underlying action because the complaint does not allege facts giving rise to a covered claim. As discussed above, the factual allegations and legal claims made in the complaint are based solely upon the death of an employee of J&L Home and the Policy specifically excludes coverage where the "bodily injury" (death) is to an employee of J&L Home. Accordingly, there is no coverage and no duty to defend J&L Home on the part of QBE. With regard to the individual defendants, all were employed by J&L Home. The Auto Policy excludes coverage where the bodily injury is that of a co-employee. Therefore, there is no coverage and no duty to defend the individual defendants on the part of QBE.

The duty to defend under Alabama law is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured. *Ajdarodini v. State Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993). "The insurer's duty to defend at this preliminary stage 'must be determined primarily from the allegations of the complaint.'" *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598 (11th Cir. 1993). A court, however, is not limited to the face of the complaint but can consider existing evidence or evidence which could be adduced at trial in determining whether the event is covered. *Ladner & Co. v. So. Guaranty Ins. Co.*, 347 So. 2d 100 (Ala. 1977). Also, "if there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must

investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Blackburn v. Fidelity & Deposit Co.*, 667 So. 2d 661, 668 (Ala. 1995); *Perkins v. Hartford Ins. Group*, 932 F.2d 392 (11th Cir. 1991) (Ala.). In reviewing a complaint, the court can look to the gravamen, or principal thrust, of the complaint regardless of specific words. *Carter v. Cincinnati Ins. Co.*, 435 So. 2d 42 (Ala. 1983); *McCauley v. Estes*, 726 So. 2d 719 (Ala. Civ. App. 1998)(despite allegations of negligence, the allegations of the complaint would only support claims of willful or malicious acts); *Auto-Owners Ins. Co. v. American Central Ins. Co.*, 739 So. 2d 1078 (Ala. 1999). Where the terms of the complaint are not "so vague" there is no requirement of an independent investigation, *Stokes*, 990 F.2d at 606; *State Farm Fire & Cas. Co. v. Burkhardt*, 96 F. Supp. 2d 1342 (M.D. Ala. 2000).

If the complaint contains both covered and non-covered counts, the insurer must provide a defense to the entire action. *Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570 (Ala. 1988). However, **an insurer may withdraw if complaint is amended to allege only excluded claims** provided (1) the insurer reserved its rights and (2) kept insured informed, *Shelby Steel Fabricators, Inc. v. USF&G*, 569 So. 2d 309 (Ala. 1990).

In *State National Insurance Company v. Affordable Homes of Troy, LLC*, 368 F. Supp. 2d 1281 (M.D. Ala. 2005), a commercial general liability insurer sought declaratory judgment that it had no duty to defend or indemnify its insureds in an underlying state court action on tort counterclaims asserted by a former employee of the insureds. The insurer argued that an "Employment-Related Practices Exclusion" precluded insurance coverage for the acts alleged in the counterclaim. *Id.* at 1287. The Middle District of Alabama granted summary judgment in favor of the insurer because "on its face, it is apparent that the claims alleged in the Counterclaim fall squarely within the Exclusion;" therefore, "the clear and unequivocal language of the Policy

15

warrants preclusion of insurance coverage for the acts alleged in . . . [the] Counterclaim." *Id.* at 1288. Because the occurrence was not covered under the policy, the insurer owed no duty to defend the underlying action.

Here, the plain language of the policy at issue precludes insurance coverage for the bodily injuries or in this case death of an employee. No defense is owed to J&L Home based on the Employer's Liability Exclusion. No defense is owed to the individual Defendants based on the Fellow Employee Exclusions. Therefore, QBE does not owe a duty to defend for claims which do not fall within the ambit of its coverage, and summary judgment is due to be granted in QBE's favor on the issue of duty to defend, as matter of law.

### e. Summary Judgment is Also Due QBE Based Upon the Absence of a Responsive Pleading

QBE is also due a default judgment against J&L Home, Mr. Thomason, Mr. Russell, and Mr. Gantt because no one has filed a responsive pleading to the Complaint for Declaratory Judgment Action initiated by QBE. While these parties (with the exception of Mr. Russell) filed a motion to dismiss, the motion to dismiss was denied and no responsive pleading has timely followed the denial of the motion to dismiss. The Federal Rules of Civil Procedure require a responsive pleading to be filed within 10 days after a denial of Motion to Dismiss. *See Rule 12* of the Federal Rules of Civil Procedure. Based upon the Respondents' failure to timely and properly deny the Complaint for Declaratory Judgment, QBE is entitled to a default judgment.

## IV. Conclusion

Based upon the foregoing, Petitioner QBE respectfully requests that this Court grant summary judgment in its favor, holding that (1) the QBE policy at issue does not provide coverage to J&L Home, Mr. Russell, Mr. Thomason, or Mr. Gantt for the claims made in the suit styled *Daniel McGougin, as Administrator of the Estate of Daniel Leigh McGougin v. J&L*

*Home Enterprises, Inc., et al.*; In the Circuit Court of Escambia County; Civil Action Number: CV-06-235; (2) QBE does not owe J&L Home, Mr. Gantt, Mr. Thomason, or Mr. Russell a duty to defend in the suit styled *Daniel McGougin, as Administrator of the Estate of Daniel Leigh McGougin v. J&L Home Enterprises, Inc., et al.*; In the Circuit Court of Escambia County; Civil Action Number: CV-06-235; (3) QBE does not owe J&L Home, Mr. Russell, Mr. Gantt, or Mr. Thomason indemnification related to suit styled *Daniel McGougin, as Administrator of the Estate of Daniel Leigh McGougin v. J&L Home Enterprises, Inc., et al.*; In the Circuit Court of Escambia County; Civil Action Number: CV-06-235.

                    Respectfully submitted,

                    /s/ Jamie A. Johnston
                    _____
                    Thomas T. Gallion, III
                    Jamie A. Johnston
                    Attorneys for the Petitioner

OF COUNSEL:

Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573    Telephone
(334) 264-7945    Facsimile


D. Scott Wright
Wright, Green, PC
1495 University Boulevard
P.O. Box 16818
Mobile, Alabama 36616
(251) 344-7744    Telephone
(251) 343-9629    Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document upon the following by causing a true and complete copy of same to be deposited in the United States Mail, sufficient first class postage prepaid, on this the 28th day of November 2007, addressed as follows:

J&L Home Enterprises, Inc.  
c/o James Alan Thomason  
4030 Appleton Road  
Brewton, Alabama 36426

Mr. William A. Russell, Jr.  
AIS No.:207923  
J.O. Fountain Correctional Center  
Fountain 3800  
Atmore, Alabama 36503-3800

Kearnest Lynell Gantt  
12204 Highway 29  
Brewton, Alabama 36426

James Alan Thomason  
4030 Appleton Road  
Brewton, Alabama 36426

/s/ Jamie A. Johnston  
_____  
OF COUNSEL

#29412  
02391-602